IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 08-cv-01957-MSK-LTM

KEN W. VESTER,

        Plaintiff,

v.

ASSET ACCEPTANCE, L.L.C.,

        Defendant.

_____

**OPINION AND ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT
AND MOTION TO DISMISS AND OVERRULING OBJECTIONS**

_____

**THIS MATTER** comes before the Court pursuant to the Plaintiff's Motion for Partial

Summary Judgment **(# 13,** as supplemented **# 17)**, the Defendant's response **(# 16)**, and the

Plaintiff's reply **(# 19)**; the Plaintiff's Second Motion for Summary Judgment **(# 45)**, the

Defendant's response **(# 56)**, and the Plaintiff's reply **(# 57)**; the Defendant's Motion to Dismiss

**(# 47)**, the Plaintiff's response **(# 52)**, and the Defendant's reply **(# 58)**; and the Plaintiff's

Objections **(# 89)** to the June 10, 2009 Recommendation **(# 88)** of United States Magistrate

Judge Laird T. Milburn that the Plaintiff's Motion for Leave to Amend the Complaint **(# 76)** and

Motion for Taking of Judicial Notice **(# 81)** be denied, and the Defendant's response **(# 90)**.

**FACTS**

According to the Complaint **(# 1)**, in September 2007, Defendant Asset Acceptance

("AA") commenced two actions in the Colorado County Court for Mesa County, attempting to

1

collect on two credit accounts – the "Providian account" and the "Household account" – owed by the Plaintiff.  The Plaintiff alleges that AA lacked standing to pursue these claims, as the original creditors made no representation that the accounts had balances due, and because the statute of limitations in Texas, where the Plaintiff resided when the accounts went into default, had expired.  Furthermore, the Plaintiff alleges that AA "refused to provide the Plaintiff with all of the terms and conditions that relate to AA's claimed ownership" of the debts.  AA later voluntarily dismissed the Mesa County actions.

In this action, the Plaintiff alleges three claims that arise from AA's conduct in the prior action: (i) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692d, in that AA's "time-barred attempts to collect amounts not expressly authorized," among other things, "caused emotional distress to the Plaintiff"; (ii) violation of the FDCPA, 15 U.S.C. § 1692e, in that AA made "false, deceptive, or misleading representations" as to the amount of interest owed on the Providian and Household accounts; and (iii) violation of the FDCPA, 15 U.S.C. § 1692f, in that AA "used unconscionable means" to collect on the Providian and Household accounts, in that it "attempted to collect an amount not expressly authorized" by the credit agreements and "communicated to various persons information which was known or which should have been known to be false."

The Plaintiff then filed the instant Motion for Summary Judgment (**# 13**).  The motion does not comply with the format required by the Court, *see* MSK Practice Standards (Civil) §V.I.3, and is somewhat difficult to parse.  It appears that the Plaintiff seeks summary judgment on his second and third claims for relief, arguing: (i) in AA's suit to collect on the Providian account, AA represented that the Plaintiff owed the sum of $ 814.55 in interest on the account;

(ii) that the account agreement provided that the interest rate charged on purchases made through April 2002 would be 0%; (iii) the Plaintiff made "no purchases or other transactions before or after the April 2002 statement date" on which any interest could be charged under the terms of the agreement[1]; and (iv) therefore, the allegations by AA in the suit constitute false representations in violation of 15 U.S.C. § 1692e, and reflect an attempt to collect a debt not supported by evidence, and thus, violate 15 U.S.C. § 1692f.

Thereafter, the Plaintiff filed what is captioned a "Second Dispositive Motion" (# 45), which appears to be a motion for summary judgment. Like its predecessor, it does not comply with the Court's required format for summary judgment motions. This motion, too, is difficult to parse, as it does not appear to be organized in any meaningful way and requests relief that does not appear to be connected to the claims asserted in this case. *See e.g. Docket* # 45, ("Plaintiff respectfully moves for an order applying Colorado law, and a finding the Mesa County Court did not have jurisdiction over the claims the Defendant asserted . . . Plaintiff also requests an order and judgment for liability that included the $1,000 statutory damages allowed under 15 U.S.C. § 1692k. Plaintiff contends that fairness requires a trial on the amount of actual damages."). As best the Court can determine, the Plaintiff: (i) seeks a declaration that certain unspecified orders issued by the Mesa County Court were void, as that court lacked jurisdiction over AA's claim once AA was unable to produce evidence demonstrating the assignment of the debts from the original creditors to it; (ii) asserts some argument to the effect that AA's claims in the Mesa County action were time-barred and that its continued pursuit of those claims was not the result

---

[1] The Court notes that the Plaintiff's affidavit, submitted in support of the motion, states that "I made no charges on the Providian account after August 2001."

of a "bona fide error"; (iii) argues that AA unconscionably submitted a 2003 account agreement to establish the terms of an account that the Plaintiff ceased using in 2001; and (iv) offers a string of mostly abbreviated, skeletal contentions that AA violated various provisions of the FDCPA.[2]

Simultaneously, AA filed a motion to dismiss (# 47), arguing: (i) the Plaintiff fails to state a claim in his second and third claims for relief, as those claims are predicated on the notion that AA lacked standing to pursue the Mesa County action and that the claims in that action were untimely, and the Mesa County court conclusively adjudicated those issues in AA's favor, thus collaterally estopping the Plaintiff from asserting those same arguments here; and (ii) with regard to the remaining claim (the issue relating to the demand for accrued interest on the Providian account as discussed in the Plaintiff's original summary judgment motion), the Court should dismiss that claim for the reasons stated in AA's summary judgment response.

On May 3, 2009, the Plaintiff moved for leave to amend the Complaint (# 76) to add 1,294 additional "John Doe" parties[3] as plaintiffs and AA's attorneys in the Mesa County action as defendants, as well as adding claims for violation of the Colorado Consumer Protection Act, and tort claims for abuse of process and fraudulent misrepresentation.  The Plaintiff premised his request on a contention that in April 2009 in the Mesa County action, AA acknowledged to the

---

[2]The Court notes that the motion is supported by a single-page attorney's affirmation, purporting to attach various documents obtained in discovery.  Whether due to oversight or clerical error, the exhibits referenced in the affirmation were not filed.  The Plaintiff subsequently obtained leave to file a corrected affirmation, and the Court deems Exhibit A to Docket # 50 to be submitted in support of the Plaintiff's second summary judgment motion.

[3]The Plaintiff appears to be seeking relief on behalf of all consumers that have been the subject of collection suits filed by AA in Colorado.  The proposed Amended Complaint does not purport to assert a class action, but rather, in excess of 1,000 individual claims joined in a single litigation.

court that it could not produce sufficient evidence to demonstrate the valid assignment of the

debts from the original creditors to AA.  The proposed new claims suggested that AA, through

its counsel, brought collection suits knowing that AA failed to have valid assignments for the

debts it was purporting to collect.  A few weeks later, the Plaintiff filed a Motion for Taking of

Judicial Notice (# 81), asking that the Court take judicial notice under Fed. R. Evid. 201[4] of two

portions of the Colorado Rules of Professional Conduct and a list of cases, prepared by the

Plaintiff, demonstrating that at least 275 cases asserting FDCPA claims have been filed against

AA in various jurisdictions.

      The Court referred both the motion for leave to amend and the motion for judicial notice

to the Magistrate Judge.  On June 10, 2009, the Magistrate Judge issued a Recommendation

(#88) that both motions be denied, finding: (i) that the deadline in the Scheduling Order (# 25)

for joinder of parties and amendment of pleadings was March 2, 2009; (ii) the motion for leave

to amend offers no "legitimate basis for amending the complaint to add" defense counsel or

unnamed plaintiffs; (iii) the identity and conduct of AA's counsel were known to the Plaintiffs at

the commencement of this action; (iv) the Plaintiff has offered no just reason for delaying

amendment; (v) allowing amendment at this stage would be prejudicial to AA, apparently due to

the closure of discovery; (vi) the proposed Amended Complaint requests a jury trial when the

original Complaint failed to do so and the time for requesting a jury trial on the initial claims in

the Complaint has passed; (vii) judicial notice of the Colorado Rules of Professional Conduct is

unnecessary, as those rules expressly provide that their violation does not give rise to any civil

---

[4]The motion does not identify a particular question before the Court that the items sought
to be noticed relate to.

liability; and (viii) judicial notice of the listing of cases involving AA is inappropriate, as the document is both hearsay and has no evidentiary significance.

On June 18, 2009, the Plaintiff timely filed Objections **(# 89)** to the Magistrate Judge's Recommendation.  In most respects, the Objections do not clearly identify any particular finding or conclusion of the Magistrate Judge that is alleged to be in error.  Rather, the Plaintiff: (i) recites his theory underlying the claims against AA's attorneys and urges that the interests of justice warrant holding them to account for their conduct; (ii) contends that the Magistrate Judge's finding as to the deadline for amendment of pleadings in the Scheduling Order was in error, and that the motion for leave to amend was filed within the appropriate deadline; and (iii) asserts that AA failed to produce documents relating to the assignment of the debts to AA during discovery, and it was not clear to the Plaintiff that AA had no right to seek to collect on the debts until April 29, 2009, when AA admitted as much in the Mesa County action.

## ANALYSIS

### A.  Summary judgment motions

At the outset, the Court finds that neither of the Plaintiff's summary judgment motions comply with the format required of such motions by the Court's Practice Standards.  Among other things, the motions do not clearly indicate the claim(s) upon which summary judgment is sought, do not separately identify each of the elements of those claims, and does not itemize by element the facts upon which the Plaintiff relies.  The Court's format serves two important purposes: (i) it focuses the motion on specific elements of specific claims to prevent  rambling, disjointed, or unfocused motions; and (ii) streamlines and standardizes the presentation of such motions, allowing the Court to more quickly ascertain the issues and facts in dispute.  A party's

failure to comply with the requirements of the practice standards does not automatically result in denial, but failure to do so makes the determination of the motion more difficult, less precise and often, as in this case, requires the expenditure of substantial judicial time and effort to untangle the allegations and isolating the actual issues in dispute.  Here, the Plaintiff's failure to follow the  format prescribed in the Court's practice standards  has resulted in precisely the evils that the Practice Standards seek to avoid.  A court may, in its discretion, summarily deny a non-complaint motion without reaching the merits.  *Neely v. Ortiz*, 241 Fed.Appx. 474, 478 (10th Cir. 2007) (unpublished), *citing Motley v. Marathon Oil Co*., 71 F.3d 1547, 1552 (10th Cir. 1995). Summary denial is appropriate with regard to these motions, and they are denied for that reason. However, as discussed below, the Court further finds that the motions would also be denied on their merits.

      1.  <u>Standard of review</u>

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Substantive law governs what facts are material and what issues must be determined.  It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof.  *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter

for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment

motion, a court views all evidence in the light most favorable to the non-moving party, thereby

favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir.

2002).

      Where, as here, the movant has the burden of proof on a claim or defense, the movant

must establish every element of its claim or defense by sufficient, competent evidence.  *See* Fed.

R. Civ. P. 56(e).  Once the moving party has met its burden, to avoid summary judgment the

responding party must present sufficient, competent, contradictory evidence to establish a

genuine factual dispute.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th

Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).  If there is a genuine

dispute as to a material fact, a trial is required.  If there is no genuine dispute as to any material

fact, no trial is required.  The court then applies the law to the undisputed facts and  enters

judgment.

      2.  Plaintiff's first motion

      As best the Court can tell, the Plaintiff's first summary judgment motion seeks judgment

on the Plaintiff's second and third claims for relief, sounding in violation of 15 U.S.C. § 1692e

and § 1692f.

      15 U.S.C. § 1692e provides that a debt collector "may not use any false, deceptive, or

misleading representation or means in connection with the collection of any debt."  Thus, the

elements of a claim under that section require the Plaintiff to show: (i) that he is a "consumer"

protected under the FDCPA; (ii) that AA was a "debt collector" under that Act; (iii) that AA was

engaged in the "collection of [a] debt"; and (iv) that AA used false, deceptive, or misleading

representations in connection with those collection efforts.  Similarly, 15 U.S.C. § 1692f

provides that a debt collector "may not use unfair or unconscionable means to attempt to collect

any debt."  The elements of a § 1692f claim would be similar to those listed above, except that

the final element would require the Plaintiff to show that AA used "unfair or unconscionable

methods" to collect the debt.

The Plaintiff's motion makes no effort to point to evidence establishing the first two

elements: whether the Plaintiff was a "consumer" (as opposed to, say, incurring a commercial

debt) under the terms of the FDCPA, and whether AA meets the fairly technical requirements of

being a "debt collector" under that statute.  *See e.g. Llewellyn v. Shearson Financial Network,*

*Inc.*, 622 F.Supp. 1062, 1073 (D. Colo. 2009) (discussing the statutory definition of "debt

collector" in 15 U.S.C. § 1692a(6)(F)(iii)).  For this reason alone, the Court finds that the

Plaintiff has failed to carry his burden on summary judgment of coming forward with evidence

to establish every element of the claim upon which judgment is sought.

Moreover, the Court finds that the Plaintiff's evidence is insufficient to demonstrate that

AA's contention that interest had accrued on the Providian debt was false or deceptive, or unfair

or unconscionable.  The crux of the issue appears to turn on the question of what interest rate

applied, and to what sum, as of April 2002.  The Plaintiff supplies a somewhat illegible copy of

an account agreement that provides that the applicable interest rate "for purchases" is "0%

through your statement date in April 2002 (introductory period), after that 23.99%."  AA's

response to the motion supplies a more legible and more complete copy of that document, which

further explains in Section 3 ("Finance Charges") that "finance charges begin to accrue on a debt

when it is included in . . . the daily purchase balance . .  and continue to accrue until that balance

is reduced by a payment or credit."  The agreement also explains the means by which interest is

calculated: "To figure the daily finance charge for purchases . .  we start with your previous

day's Purchase Balance . . . and multiply the net amount by the applicable daily periodic rate."

The Plaintiff appears to concede that he made purchases on the account through August 2001,

and apparently continued to carry some portion of that "purchase balance" into and beyond April

2002.  By the plain language of the agreement, that unpaid purchase balance did not accrue

interest until the "statement date" in April 2002, but thereafter, began accruing interest at an

annual rate of nearly 24%.  The Plaintiff's argument – that he owes no interest on the account

because he initiated no new purchases in or after April 2002 – is flawed.  It confuses the concept

of discrete "purchases" – *i.e.* individual transactions on the account – with the agreement's use

of the term "purchase balance," a running total of purchases made minus payments credited

against that total.  Even if he made no new purchases in or after April 2002, the plain language

of the account agreement provides that a 23.99% interest rate would be applied to any unpaid

purchase balance the Plaintiff had as of that date.  Absent a showing by the Plaintiff that he

carried no purchase balance into and beyond April 2002, the accrual of interest on any such

balance at that time was proper under the terms of the agreement.

Accordingly, the Court cannot say, on the evidence in the record on this motion, that

AA's contention that a sum of interest had accrued on the Providian account was in any way

false or misleading, and the Plaintiff's motion for summary judgment on this ground is denied.[5]

---

[5]Ordinarily, this might be sufficient for the Court to enter summary judgment in favor of
AA on this claim.  When the facts are undisputed, the Court can enter judgment for either party
as compelled by the law.  *See* Wright & Miller, FEDERAL PRACTICE & PROCEDURE, § 2720
("[S]ummary judgment may be rendered in favor of the opposing party even though the
opponent has made no formal cross-motion under Rule 56.").  However, given the development

2. <u>Plaintiff's second motion</u>

The Court confesses that it is utterly unable to ascertain which claim(s) the Plaintiff seeks judgment on by means of this motion.  In some respects – *i.e.* arguments that the Mesa County rulings were void – the motion seems to be an anticipatory response to AA's motion to dismiss (which relies upon rulings by the Mesa County court as having preclusive effect on certain issues).  Because those arguments are more properly before the Court on AA's motion, the Court defers consideration of them in their preemptive (and unfocused) state here.

In all other respects, the motion asserts arguments that are utterly devoid of meaningful support in the record.  For example, to the extent that the Court construes the Plaintiff to be seeking summary judgment on the § 1692f claim on the grounds that AA engaged in "unconscionable" conduct by submitting a 2003 account agreement when the debt at issue arose in 2001, the Court notes that nothing in the Plaintiff's evidentiary showing establishes the fact that AA did so (much less demonstrate the factual context in which it occurred).  On summary judgment, a party may not simply make naked factual averments, but must point to specific evidence in the record that, if admitted at trial and credited by the factfinder, would establish that factual contention.  *BancOklahoma Mort. Corp. v. Capital Title Co.*, 194 F.3d 1089, 1097 (10th Cir. 1999); *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).  Accordingly, because this motion is not supported by citations to evidence in the record, it is denied on the merits.

---

of the case over time – particularly the recent revelation that AA may not be able to show it had any entitlement to collect the debt from the Plaintiff – the Court cannot say that the Plaintiff would never be able to prove a § 1632e claim at trial, notwithstanding the flaws in his theory regarding accrual of interest on that account.

### B. Motion to Dismiss

#### 1. <u>Standard of review</u>

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-plead allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). The Court must limit its review to the four corners of the Complaint, but may also consider documents attached to the Complaint as exhibits, *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001), as well as unattached documents which are referred to in the Complaint and central to the plaintiff's claim, so long as the authenticity of such documents is undisputed. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

Two recent decisions from the Supreme Court have clarified the analysis that the Court undertakes when reviewing a pleading under Rule 12(b)(6) standards. First, although "detailed factual allegations" are not required, a complaint must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the complaint must have sufficient factual assertions "to raise a right to relief above the speculative level." *Id.* Second, because the Court

is "not bound to accept as true a legal conclusion couched as a factual allegation," the court must first identify and disregard averments that "are no more than conclusions [which] are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009). A court then examines the remaining, well-pled factual allegations, assuming their veracity, and determine whether the plausibly give rise to an entitlement to relief. *Id.*

      2. <u>AA's motion</u>

      AA's motion to dismiss is somewhat unorthodox, as it does not specifically attack the sufficiency of the Complaint's pleading of the claims. Rather, it presumes that each claim is premised on a particular theory, and then seeks to invoke the doctrine of collateral estoppel from rulings in the Mesa County case to disprove a key element of that theory. For example, AA appears to assume that the §1692e and § 1692f claims are premised solely on the fact that AA "lacked standing" to bring the Mesa County suits due to the absence of proof of an assignment of the debts and that the Mesa County claims were barred by the statute of limitations. *Docket* # 47 at 4. It then points to decisions by the Mesa County court denying the Plaintiff's Motion to Dismiss in that action that invoked those arguments.[6]

---

      [6]The Court notes that the Mesa County order contains no findings whatsoever. It consists of the Plaintiff's proposed order granting his motion to dismiss, over which is laid a banner that simply states "DENIED" and the Mesa County judge's name. Although the Court can give preclusive effect to findings made by another court in appropriate circumstances, where the court made no specific findings (other than that a motion failed to adequately demonstrate an entitlement to relief), there is nothing to which this Court can give preclusive effect. *See e.g. In re Alba*, 105 B.R. 132, 133 (Bankr. S.D. Fl. 1989). Moreover, the Court notes that the Mesa County case was subsequently dismissed by AA on its own motion. Thus, the Mesa County court's interlocutory ruling on the Plaintiff's motion to dismiss likely cannot be given preclusive effect, as the ultimate judgment in the case was not dependent on the ruling on the motion to dismiss. *See Klamath Strategic Investment Fund ex rel. St. Croix Ventures v. U.S.*, 568 F.3d 537, 546 (5th Cir. 2008).

While far from a model of clarity, the Complaint is susceptible to a reasonable interpretation that alleges that AA's conduct was false, misleading, unfair, or unconscionable because it was attempting to collect on debts in amounts that Providian and Household (through whom AA claimed rights) would not have contended were owed. *Docket* # 1, ¶7-9 ("neither Providian or Household represented the Plaintiff owed such sums").  Thus, the Complaint alleges that AA's "representations of the debt were false or deceptive as to the . . . amount" of the Providian and Household accounts, *id.*, ¶ 17, 18, and that "AA attempted to collect an amount not expressly authorized by the agreement." *Id.*, ¶ 14, 20.  As a result, even if the Court were to conclude, as AA argues, that the state court rulings on issues of standing and timeliness were entitled to preclusive effect, the Court would nevertheless conclude that the Complaint sufficiently states each of the claims the Plaintiff asserts.

Accordingly, AA's motion to dismiss is denied.

**C.  Objections to Recommendation**

Finally, the Court turns to the Plaintiff's Objections to the Magistrate Judge's Recommendation that both the motion for leave to amend and motion for judicial notice be denied.

The Court assumes that the denial of the motion for leave to amend operates dispositively as to the claims sought to be added, and thus, the Court reviews the objected-to portions of that Recommendation *de novo* pursuant to Fed. R. Civ. P. 72(b).  The Court can discern nothing in the Plaintiff's Objections that relate to the motion for judicial notice, and thus, treats that portion of the Recommendation as un-objected to.  In such circumstances, the Court reviews that portion of the Recommendation under whatever standard of review it deems appropriate.  *Summers v.*

14

*State of Utah*, 927 F.2d 1165, 1167 (10th Cir.1991).   The Court has nevertheless reviews that portion of the Recommendation under the *de novo* standard as well.

The Court first notes that, with one exception, the Plaintiff's Objections regarding the recommendation that leave to amend be denied do not specifically identify any particular finding or conclusion by the Magistrate Judge that is alleged to be erroneous.   Rule 72(b) requires that a party "file <u>specific</u> written objections" to a recommendation.   (Emphasis added.)   Thus, it is necessary for a party objecting to a recommendation to identify the particular factual or legal error committed by the Magistrate Judge, allowing the District Court to focus on that issue and correct it if necessary.   *U.S. v. One Parcel of Real Property*, 73 F.3d 1057, 1059-60 (10th Cir. 1996).   An "objection" that merely reargues the underlying motion is little different than an "objection" that simply refers the District Court back to the original motion papers; both are insufficiently specific to preserve the issue for *de novo* review.   *Id.* at 1060.

Here, the only portion of the Plaintiff's Objections that specifically identifies a factual or legal error by the Magistrate Judge is the Plaintiff's contention that, notwithstanding the Magistrate Judge's finding that the Scheduling Order (**# 25**) set a deadline of March 2, 2009, a subsequent amendment (**# 72**) to that Order extended the deadline to May 4, 2009, thereby rendering the Plaintiff's motion for leave to amend timely according to that schedule.   This Objection is well-taken.   However, upon *de novo* review of the merits of the motion for leave to amend in light of this corrected factual finding, the Court nevertheless agrees with the Magistrate Judge that leave to amend is not appropriate.

Under Fed. R. Civ. P. 15(a), leave to amend a pleading shall be "freely granted" absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure

to cure deficiencies by previous amendments, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Beerheide v. Zavaras*, 997 F.Supp. 1405, 1409 (D. Colo. 1998), *citing Foman v. Davis*, 371 U.S. 178, 182 (1962).  An amendment can be denied on the grounds of futility if the amended pleading itself would be subject to dismissal.  *Jefferson County School Dist. v. Moody's Investor Services, Inc.*, 175 F.3d 848, 859 (10th Cir. 1999); *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir.1999).

Here, the Magistrate Judge determined that the proposed amendment was the result of undue delay and would result in prejudice to AA.  This Court agrees.  The material sought to be added to an amended pleading can be grouped into two categories: (i) a change of the focus of this case from a single claim that AA violated the FDCPA when attempting to collect debts owed by the Plaintiff to a broad, class-type complaint that AA engages in a pattern of unfounded lawsuits against debtors without first obtaining legal assignment of the debts it purports to collect; and (ii) the addition of claims against AA's lawyers in the Mesa County action, apparently based on their alleged admission in April 2009 that AA could not substantiate the alleged assignment of the debts to it.

Putting the former issue aside (although it appears that the proposed "John Doe" claims suffer from a host of defects that alone would warrant denial of leave to amend), the Court focuses only on the latter contention.  With regard to the Plaintiff's delay is asserting this issue, the Court finds that the Plaintiff has <u>always</u> taken the position in this action that AA lacked a valid assignment of the debts.  *See e.g.* Complaint, ¶ 6 (asserting AA's lack of "standing"), ¶ 12 (noting AA's failure to substantiate its "claimed ownership" of the debts); *Docket* # 45 at 2-3 (asserting that in June 2008, "Vester again demanded evidence of an assignment of the Providian

and Household accounts [and yet] Asset did not produce admissible evidence of a valid assignment").  Moreover, the original Complaint attaches copies of the Mesa County pleadings, to which AA's attorneys are signatories.  Thus, the Plaintiff has known since the beginning of this action both the identities of those involved and the conduct that underlies the proposed amendment, yet he waited some until the close of discovery to plead those claims.  The Court rejects the Plaintiff's argument that it was not until the April 2009 "admission" by AA that its assignments were defective that he could actually make such an assertion consistent with Fed. R. Civ. P. 11.  As discussed above, the Plaintiff has repeatedly made these assertions throughout this case.  Nothing in the record explains why the Plaintiff could not have asserted the claims against AA's attorneys at the same time he filed his initial Complaint, and thus, his request to assert such claims now appears to be unduly dilatory.[7]

In addition, this Court agrees with the Magistrate Judge that granting leave to amend at this time would be unduly prejudicial to AA.  The discovery deadline in this case was May 4, 2009 (**# 72**), the day after the Plaintiff filed his motion for leave to amend.  For all practical purposes, the discovery period was closed at the time the Plaintiff sought leave to amend, and granting such leave would necessarily entail re-opening the discovery period to allow the newly-named Defendants an opportunity to test the claims against them.  This operates to prejudice AA, who could reasonably have assume that it had concluded the discovery phase of the case by May 4, 2009 and would now be required to expend additional time and money monitoring the

---

[7]The fact that the motion was filed within the Scheduling Order's deadline for joinder of parties and amendment of pleadings does not, of itself, overcome a claim of undue delay.  The Scheduling Order sets an outside date by which requests for leave to amend must be filed, but cannot be read to constitute a blanket permission to delay asserting claims or defenses already known to a party.

discovery exchanged between the Plaintiff and the new Defendants.  Moreover, there is reason to believe that the time needed for discovery and motion practice by the newly-named Defendants – a period that could easily span six months – would threaten the November 2009 Pretrial Conference date in this action.  This operates to AA's prejudice, as it would further delay AA's entitlement to a prompt trial on the claims against it.  Such prejudice is undue, insofar as the Court has already found that the Plaintiff could have asserted the claims against AA's attorneys much earlier in this case.

Accordingly, having considered the matter *de novo*, the Court overrules the Plaintiff's Objections and adopts the Magistrate Judge's Recommendation that the motion for leave to amend be denied.

Upon *de novo* review, the Court also agrees that the motion for judicial notice should be denied.  In particular, the Court agrees with the Magistrate Judge that the "facts" sought to be noticed are of no significance to the claims asserted herein.  To the extent the Plaintiff believes that AA's attorneys are in violation of ethical rules, he is free to file a grievance against them with the appropriate agency.  The fact that a number of FDCPA lawsuits have been filed against AA by others does nothing to prove that AA's actions in this case violated that act.  Accordingly, the Court adopts the Recommendation that the motion for judicial notice be denied.

## CONCLUSION

For the foregoing reasons, the Plaintiff's Motion for Partial Summary Judgment **(# 13)** is **DENIED**.  The Plaintiff's Second Motion for Summary Judgment **(# 45)** is **DENIED**.  The Defendant's Motion to Dismiss **(# 47)** is **DENIED**.  The Plaintiff's Objections **(# 89)** are

18

**OVERRULED**, and the Court **ADOPTS** the June 10, 2009 Recommendation **(# 88)**.  The

Plaintiff's Motion for Leave to Amend the Complaint **(# 76)** and Motion for Taking of Judicial

Notice **(# 81)** are **DENIED**.

Dated this 9th day of September, 2009

**BY THE COURT:**

Marcia S. Krieger
United States District Judge